**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION**

| | | |
|---|---|---|
| VIREO SYSTEMS, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:14-cv-02359 |
| | ) | |
| HTG VENTURES, LLC; JOHN T. | ) | Judge Sharp |
| LEWIS, JR., and TIMOTHY | ) | Mag. Judge Bryant |
| KENSINGER, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM

Pending before the Court is Plaintiff Vireo Systems, Inc.'s request for appointment of a receiver over ProMera Health, LLC. (Docket No. 152). In the alternative, Plaintiff has renewed its request for injunctive relief. Id. The Court entered a Temporary Restraining Order on February 17, 2016 and held an evidentiary hearing on March 1, 2016. Because the Court agrees that there is a substantial likelihood of success on the merits of Plaintiff's claim and that Defendants' fraudulent scheme must be stopped, the Court now appoints a receiver over Defendant HTG Ventures, LLC in accordance with this memorandum.

### I.     Factual Background

**A. Plaintiff's Allegations**

This is an action for accounting and to set aside the capital contribution notice issued by Defendants HTG Ventures, LLC, John T. Lewis, Jr., and Timothy Kensinger. Plaintiff alleges that Defendants have violated the terms and conditions set forth in the Operating Agreement (Docket No. 65-1) that the parties signed at the inception of their joint business endeavor, ProMera Health, LLC ("ProMera"). Through discovery, Vireo has identified a variety of actions

1

taken by Defendants to cause ProMera to enter into transactions, directly or indirectly, with Defendants or their affiliates, including Harvest Trading Group, Inc.; HTG Technologies, LLC; Accord Park Realty; and James P. Lewis.  Vireo asserts that it has never approved any of these transactions and alleges that these transactions are a violation of Defendants' fiduciary duties and the Operating Agreement.  Further, Vireo disputes Defendants' efforts to reduce Vireo's equity interest in ProMera from 42% to 11.3%.  Vireo alleges that this reduction stems from the capital contribution notice that forms the basis of Vireo's challenge in this Court.

Vireo alleges that in the month following the issuance of the capital contribution notice, ProMera's financial records reflect suspicious transactions.  For example, Vireo notes that documents produced in discovery indicate that ProMera went from operating at a $1.1 million loss to operating at a $226,000 profit, a $1.3 million swing in 30 days.  During the same 30-day time period, Vireo alleges, ProMera's financial records reflect a $953,424 swing, from ProMera owing HTG $464,925 to HTG owing ProMera $488,499.

Vireo also alleges that Defendants have caused ProMera to sell product to their affiliate, HTG, at no mark up.  According to Vireo, HTG then sells the product to other retail distributors and takes fees and expenses, directly or indirectly, before ProMera receives any return on its products.  For 2014 alone, Vireo asserts, this resulted in ProMera only receiving $226,000 of net income on $9.26 million of ProMera product sales.  Vireo contends that during that same year, HTG Administrative Expense was $555,555; Trucking/Fulfillment/Pack Expense was $824,610; General Compensation was $795,400; Rep. Commission Expense was $243,918; Advertising Expense was $868,374.  Vireo argues that these fees and expenses resulted in a total of at least $3.28 million being paid, directly or indirectly, to Defendants or their affiliates.  Vireo maintains that it did not approve any of these expenses.

2

In addition, Vireo alleges that Defendants have failed to timely provide to Vireo ProMera's and its affiliates' books and financial records and failed to keep adequate records. For instance, Vireo reports that Defendants have only produced ProMera's financial statements through August 31, 2015 to date but not general ledgers or other detail to back up or validate the purported expenses or revenues. From the 2015 records produced to date, it appears that ProMera is operating at a loss of $1.6 million. Despite the loss reflected in the documents, Vireo argues that Defendants and their affiliates have been paid the following:

| | |
|---|---:|
| Advertising Expense | $1,618,602 |
| Trucking/Fulfillment Expense | 435,800 |
| Rep. Commission Expense | 274,533 |
| HTG Administrative Expense | 330,079 |
| | $2,659,014 |

**B. The March 1, 2016 Evidentiary Hearing**

The testimony and evidence introduced at the March 1 hearing substantially support Plaintiff's allegations. Plaintiff's expert witness, Kevin C. Crumbo, presented comprehensive and extremely credible testimony regarding the deficiencies in Defendants' record-keeping. Mr. Crumbo stated that he typically looks to see whether the financials of a company are complete, accurate, and timely. In the case of ProMera and HTG, Mr. Crumbo states that he "just cannot find those elements." Based on the absence of these elements and the scant financial records that Defendants have produced as part of this litigation, Mr. Crumbo concluded that Defendants have "taken everything off the books," which means "there's really no visibility to ProMera's owners as to exactly what's happening with the business." Mr. Crumbo even stated that there is "really no way to manage and measure this business in a logical way." He found all of this to be "really alarming" and indicative of fraud. Mr. Crumbo also expressed his strong belief that ProMera is being operated primarily for the benefit of HTG. Mr. Crumbo also addressed the impact of the

3

ever-growing delay in remedying the wrong alleged here. When the Court inquired as to whether a delay in time negatively affects the ability to trace the money that Defendants have allegedly pocketed in violation of the Operating Agreement, Mr. Crumbo concisely responded that "You can't finish what you can't get started."

The evidence adduced at the hearing by Defendants only bolsters Plaintiff's claims. HTG Accountant Lois Parlee acknowledged that Defendant's financial statements "caused confusion" and indicated that the records perhaps cannot be reliably verified against tax returns or audited financial statements. Her testimony also confirmed Plaintiff's allegations regarding HTG's one-sided self-dealing tendencies when it comes to ProMera. As just one example, Ms. Parlee testified to seed money that Defendants took from ProMera in order to form HTG EU, a company in Belgium that is now owned by HTG Ventures. Throughout her testimony, Ms. Parlee was unable to provide satisfactory answers regarding HTG's conduct. Neither could she satisfactorily explain ProMera's vacillation between being owed hundreds of thousands of dollars by HTG and being so in debt that a capital call was necessary. At best, Ms. Parlee's testimony indicates that she blindly followed Defendants' directions, thereby enabling them to perpetrate their seemingly fraudulent scheme against Vireo.

Notably absent from Defendants' presentation of evidence was any reference to the supposed harm to ProMera that would arise if this Court were to exercise its equity power to enjoin Defendants' conduct or to appoint a receiver pending a trial on the merits. Although Defendants have vigorously opposed this Court's authority to fashion an appropriate equitable remedy and have repeatedly asserted that equitable relief will irreparably harm ProMera and its employees, (Docket Nos. 189, 194), no such harm was even whispered about at the March 1 hearing. This glaring absence brings the Court to the conclusion that the TRO did not actually

impair ProMera's operation.  The Court also notes that Defendants' discovery tactics smell of deceit.  Defendants appear to have consistently stonewalled Plaintiffs' efforts to obtain financial records.

In sum, the record in this case supports Plaintiff's allegations.  The evidence clearly points to the conclusion that Defendants have engaged and continue to engage in a fraudulent scheme in which they manage and operate ProMera solely for their own benefit.  The Court again finds Plaintiff likely to succeed on the merits of its claims and agrees that action must be taken before Defendants squander the contested assets and leave Plaintiff with a meaningless monetary judgment.

## II.     Legal Analysis

### A. The Court Has Authority to Appoint a Receiver

Federal Rule of Civil Procedure 66 governs the appointment of a receiver in a federal case.[1]  "A district court enjoys broad equitable powers to appoint a receiver over assets disputed in litigation before the court."  Liberte Capital Grp., LLC v. Capwill, 462 F.3d 543, 551 (6th Cir. 2006).  The receiver's role, and the district court's purpose in the appointment, is to safeguard the disputed assets, administer the property as suitable, and to assist the district court in achieving a final, equitable distribution of the assets if necessary.  See 13 MOORE'S FEDERAL PRACTICE ¶¶ 66.02-.03 (3d ed. 1999).  As an officer of the court, the receiver's powers are coextensive with his order of appointment.  Id.

A federal court must have subject matter jurisdiction over the underlying action in order to appoint a receiver.  Charles A. Wright, Arthur R. Miller & Mary Kay Kane, FEDERAL PRACTICE AND PROCEDURE: CIVIL 2d § 2985 (1997) (hereinafter "Wright, Miller & Kane").  A

---

[1] Federal law governs issue of whether to appoint receiver in diversity action.  Canada Life Assur. Co. v. LaPeter, 563 F.3d 837 (9th Cir. 2009).

5

federal court, however, derives its power to appoint a receiver from its equity jurisdiction, not its subject matter jurisdiction. Burnrite Coal Briquette Co. v. Riggs, 274 U.S. 208, 212 (1927); Inland Empire Ins. Co. v. Freed, 239 F.2d 289, 292 (10th Cir. 1956). Thus, a federal court should appoint a receiver only when appointment is "auxiliary to some primary relief which is sought and which equity may appropriately grant." Kelleam v. Marlyand Cas. Co. of Baltimore, MD., 312 U.S. 377, 381 (1941). Further, the party seeking receivership must have a legal or equitable substantive right in the property he wishes to seize, which substantive right must amount to more than a mere claim. A district court, therefore, will not appoint a receiver at the insistence of a simple contract creditor. Wright, Miller & Kane § 2983.

Vireo filed this diversity suit seeking relief from Defendants' alleged wrongdoing. More specifically, Vireo seeks an accounting and to set aside the capital contribution notice. Plaintiff's request to appoint a receiver at this juncture arises as a direct product of Defendants' ongoing fraudulent conduct. Accordingly, receivership is merely an auxiliary remedy that is meant to protect the contested assets pending a trial on the merits. Vireo also has an equity stake in the profit garnered from Defendants' sale and distribution of ProMera products, meaning Vireo has a substantive right in the assets which it seeks to have put in receivership. In sum, the appointment of a receiver in this case falls well within the scope of the Court's equity powers and provides appropriate ancillary relief pending trial.

**B. Receivership Is Necessary to Protect Vireo's Interest**

District courts consider a number of factors in deciding whether to appoint a receiver. These factors include "whether the property at issue is in imminent danger of . . . being lost, concealed, injured, diminished in value, or squandered, whether the defendant engaged in fraudulent conduct, the inadequacy of the available legal remedies, the lack of less drastic

equitable remedies, and the likelihood that the appointment will do more good than harm." Pension Ben. Guar. Corp. v. Evans Tempcon, Inc., No. 15-1388, 2015 WL 6685319, at *4 (6th Cir. Nov. 2, 2015) (internal quotation marks and citation omitted). The appointment of a receiver is "generally reserved for situations where the business's 'funds or properties are being mismanaged and are in imminent danger of being lost to the stockholders and creditors through the collusion and fraud of [the corporate] officers.'" Phillippi v. Jim Phillippi, Inc., No. 2:07-CV-1001, 2009 WL 1394830, at *2 (S.D. Ohio May 18, 2009) (citing Macon Lumber Co. v. Bishop & Collins, 229 F.2d 305, 307 (6th Cir. 1956)), report and recommendation adopted, No. 2:07-CV-1001, 2009 WL 1651330 (S.D. Ohio June 10, 2009). Indeed, "where it is necessary to preserve assets from irreparable loss through mismanagement of its officers or otherwise, a receiver may be appointed to administer its assets for the benefit of its creditors or its stockholders." Macon Lumber, 229 F.2d at 307.

The evidence now on the record indicates that receivership is necessary to prevent ProMera-related assets from being lost, concealed, injured, diminished in value, or squandered by Defendants. Vireo has no adequate remedy at law and will suffer immediate and irreparable harm. As demonstrated above, from the limited information provided to date through August 31, 2015, ProMera had suffered a loss for the year of $1.5 million, while at the same time, Defendants or their affiliates were paid $2,659,014. For 2014, Defendants or their affiliates were paid at least $3.2 million, while ProMera only received .025% of the ProMera product sales, a total of $226,000 of net income. The harm is irreparable because there is a likelihood that money will not be available to pay the damages suffered by Vireo due to the extent of the breaches of fiduciary duty and other misconduct. Indeed, the testimony at the March 1 hearing indicates that tracing and recovering assets wrongfully obtained by Defendants will present a

7

potentially insurmountable challenge, the difficulty of which grows with every passing day. On the other side of the ledger, Defendants have presented absolutely no evidence that receivership would do more harm than good, or even any evidence of harm.

### III. Conclusion

Although the Court believes that Plaintiff has more than likely satisfied the standard for preliminary injunctive relief, the Court finds that receivership is the better option for reigning in Defendants' misconduct and protecting disputed assets. Plaintiff initially sought to appoint a receiver to manage ProMera pending a final resolution. Given that it is Defendants who are mismanaging ProMera and improperly reaping the benefits of the sales of ProMera products outside the bounds of the Operating Agreement to which they are a party, the Court finds Defendants to be the more appropriate subjects of receivership. Appointing a receiver over Defendant HTG Ventures will both prevent further misuse of ProMera-related funds and ensure that moving forward Defendants act in accordance with the Operating Agreement.

Based on the foregoing, the Court will appoint a receiver over Defendant HTG Ventures to protect Plaintiff from further harm. The terms of the receivership are set forth in the accompanying Order.

*[signature: Kevin H. Sharp]*
KEVIN H. SHARP
UNITED STATES DISTRICT JUDGE